**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YUN ZHU,<br><br>Plaintiff,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Defendants. | Civil Case No.: 2:26-cv-01788<br><br>JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

## COMPLAINT

Plaintiff Yun Zhu ("Plaintiff") hereby sues Schedule A Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in Schedule A hereto (collectively "Defendants"), alleging as follows:

## INTRODUCTION

1. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, mainly including [redacted] using infringing versions of Plaintiff's federally registered patent US [redacted] (the "Infringing Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and/or selling Infringing Products to unknowing

consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identity and the full scope and interworking of their infringing operation.

2. Plaintiff is forced to file this action to combat Defendants' infringement of his federally registered patent as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

3. Plaintiff has been and continues to be irreparably damaged through loss of market share, loss of future sales, inability to realize a return on investment, consumer confusion, dilution, and tarnishment of his valuable patent rights as a result of Defendants' actions and seeks injunctive and monetary relief.

**PARTIES**

4. Plaintiff resides in [redacted].

5. Plaintiff is the inventor and owner of United States Patent No. [redacted] ("Patent-in-Suit"). *See* **Exhibit A**.

6. Plaintiff makes and sells a range of [redacted] under the Patent- in-Suit to consumers, including consumers in the United States.

7. Plaintiff puts large efforts and money into developing the Patent-in-Suit to overcome deficiencies of prior, conventional [redacted]

8. Since development, Plaintiff has invested significant time, money, and manpower into the promotion of the products protected by the Patent-in-Suit, including

advertising, promotions, and online publications.

9. Plaintiff started to launch the Patent-in-Suit products and received great commercial success in United States.

10. Plaintiff's primary source of sales of products protected by the Patent-in-Suit to consumer, including consumers in the United States, is Amazon.

11. The Patent-in-Suit is valid, subsisting, and in full force and effect. *See* **Exhibit A**.

12. Plaintiff's products protected by the Patent-in-Suit quickly won market recognition due to its [redacted]. Plaintiff's products protected by the Patent-in-Suit have been widely popular and quickly occupied a leading position in the field.

13. Plaintiff's products protected by the Patent-in-Suit have become recognized by consumers as high quality products sourced from Plaintiff.

14. However, based on the Patent-in-Suit's unique design, novel limitations, and market popularity, Plaintiff became aware of multiple sellers on various online platforms who also started to sell products virtually identical to the claimed Patent-in-Suit. Plaintiff filed this action to combat these Seller Aliases listed on **Schedule A** who are harming Plaintiff by offering to sell, selling, and shipping unlicensed products that infringe the Patent-in-Suit.

15. This infringing behavior by Defendants severely impacts Plaintiff's patent

rights and undermines the fair competition environment in the market. The sales of Plaintiff's products protected by the Patent-in-Suit have dropped significantly and Plaintiff's market share has been illegally eroded.

16. The infringing behavior of these Seller Aliases has diminished Plaintiff's patent rights and resulted in loss of exclusivity. Plaintiff has not been able to realize the return of investment in the products protected by the Patent-in-Suit.

17. Plaintiff has lost profit, market share, sales volume, marketplace rankings and visibility, control over the rights in the claimed invention, reputation, associated goodwill, and ability to exploit the protected invention.

18. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Patent-in-Suit.

19. Plaintiff filed this action to combat these Seller Aliases' "swarm of attacks" on the Patent-in-Suit because filing individual causes of action against each infringer ignores the form of harm Plaintiff faces.

20. Defendants are anonymous partnerships, individuals, and/or unincorporated associations who target sales to Pennsylvania residents by setting up and operating various "storefronts" under aliases via online retail websites accepting U.S. Dollars. Defendants target Pennsylvania consumers by selling, offering to sell, and/or shipping products that infringe the Patent-in-Suit.

21. Based on the Seller Alias names and limited available information,

Defendants reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Aa a result, Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

22. Upon information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A. Through fictitious Seller Aliases and the anonymity allowed by marketplace platforms, Defendants purposely conceal their identity and the full scope of their operations, making it virtually impossible for Plaintiff to learn Defendants' true identity and the scope of their infringing network operations.

23. At present, Defendants can only be identified through their storefronts names and other limited publicly available information. No credible information regarding Defendants' true identity and nature appear public. Plaintiff will voluntarily amend his Complaint as needed if Defendants provide additional credible information regarding their identity and location.

**DEFENDANTS' INFRINGING CONDUCT**

24. Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit D**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting*

*in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020). "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." **Exhibit E**, *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39.

25. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their interconnected e-commerce operations.

26. The e-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. The e-commerce stores operating under the Seller Aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of the Patent-in-Suit products.

27. E-commerce store operators like Defendants regularly register new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store

operators like Defendants to conceal their identities and the scope of their infringing operations. Such tactics help Defendants avoid being shut down. Even after being shut down through enforcement efforts, such e-commerce store operators may conveniently register another storefront under another seller alias and continue to sell the Infringing Products.

28. Defendants use different fake names and payment accounts to keep selling despite Plaintiff's actions. They also have bank accounts outside this Court's reach and move money there regularly to avoid paying any monetary judgment to Plaintiff. In fact, financial records from similar cases show that offshore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis to avoid paying any judgment ordered by a court of law.

29. Upon information and belief, Defendants are in communication with one another via WeChat and QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings.

30. Even though Defendants operate under multiple fictitious Seller Aliases, the e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship, such as templates with common design elements that intentionally omit any contact information, the same registration patterns, the same

accepted payment methods, the same check-out methods, the same keywords and titles, the same or similar product descriptions, the same advertising tactics, the same or similar images and videos, similarities in pricing and quantities, and/or the same incorrect grammar and misspellings.

31. Defendants' Infringing Products were manufactured by and come from a common source based on the same irregularities and virtual identicality of each of Defendants' products, further establishing a logical relationship amongst Defendants.

32. Each Defendant, in a virtually identical manner, attempts to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious Seller Aliases and providing no further identifying information, further establishing a logical relationship amongst Defendants.

33. Defendants are making, using, offering for sale and/or selling of the same accused product – [redacted] further establishing a logical relationship amongst Defendants. *See* **Exhibits B-C**.

34. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Alternatively, Plaintiff asserts any right to relief against Defendants for the infringement of the Patent-in-Suit jointly or severally.

35. All Defendants take advantage of a set of circumstances the anonymity and

mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiff's intellectual property rights with impunity. All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Plaintiff's infringing efforts are discovered, or Plaintiff obtains a monetary award. All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

36. The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

37. The e-commerce stores operating under the Seller Aliases offer to sell, and stand ready, willing, and able to, and upon information and belief do, sell and ship Infringing Products to the United States, including Pennsylvania. *See* **Exhibit C**.

38. Questions of fact common to all Defendants will arise inherently due to the identical anonymous nature and foreign status of Defendants – requiring the same methods to investigate, uncover, and collect evidence about infringing activity, and based upon Defendants selling the same Infringing Products – requiring the same legal and factual infringement analysis. *See* **Exhibits B-C**.

39. Defendants' use of the Patent-in-Suit in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## JURISDICTION AND VENUE

40. This is an action for infringement of the Patent-in-Suit arising under 35 U.S.C. §§ 271(a), 281, and 284 – 85. This Court has original subject matter jurisdiction over this claim under 28 U.S.C. §1331 and §1338.

41. Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Pennsylvania, through at least the fully interactive commercial Internet stores operating under the Seller Aliases, where Defendants advertise, display, offer to sell, and stand ready, willing, and able to, and upon information and belief do, sell and ship Infringing Products to residents within the Western District of Pennsylvania. *See* **Exhibit C**. As a result, each Defendant has purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their patent infringement activities at the state; Plaintiff's injuries stems from the Defendants' forum-related activities of offering to sell, selling, and shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

42. Pennsylvania also authorizes personal jurisdiction over the Defendants

pursuant to 42 Pa. Cons. Stat. § 5322 (a). Upon information and belief, Defendants are systematically directing or targeting their business activities at consumers in the United States, including Pennsylvania, through Internet platforms with such as Amazon.com, eBay.com, and/or Walmart under the Seller Aliases, through which consumers in the United States, including Pennsylvania, can and do view Defendants' Infringing Products listings, communicate with Defendants regarding their respective Infringing Products, place orders for Defendants' Infringing Products, and ship Defendants' Infringing Products to United States addresses, including Pennsylvania. *See* **Exhibit C**. As discussed above, the level of interactivity is high, where consumers of Pennsylvania can: communicate to Defendants about Infringing Products, view the Infringing Products, purchase the Infringing Products, and ship the Infringing Products to their respective Pennsylvania addresses. Defendants, through anonymous Seller Aliases, utilize Amazon.com and other marketplace platforms for the sole purpose of conducting business transactions, as described above. The Internet webpages owned and operated by Defendants, as described above, are purely commercial in nature. The level of interactivity of these marketplace platform listings owned and operated by Defendants are extremely high and establish regular business with the U.S. and Pennsylvania, as described above.

43. In addition, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or

filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendant's Infringing Product listings and based on the Seller Aliases names of foreign origin, each of the Defendants is a foreign entity or unincorporated association not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

44. Venue in the Western District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of infringement in and have significant contacts within this District – as described above, and Defendants as delineated in Schedule A are directly targeting their business activities of offering to sell, selling, and shipping the Infringing Products to this District.

45. In addition, based on information found on Defendant's Infringing Product listings and based on the Seller Aliases themselves, each of the Defendants is a foreign entity or individual, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

## COUNT I
## INFRINGEMENT OF U.S. PATENT-IN-SUIT (35 U.S.C. §271(a))

46. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47. Defendants, directly or through intermediaries, offer to sell, sell, and ship products which infringe the Patent-in-Suit. *See* **Exhibit C**.

48. Defendants are making, using, offering for sale, selling, and/or importing into the United States, and Pennsylvania, for subsequent sale or use, Infringing Products that infringe directly and/or indirectly infringe the Patent-in-Suit. *See* **Exhibit C**.

49. Defendants are directly infringing, literally infringing, and/or infringing the Patent- in-Suit under the doctrine of equivalents. *See* **Exhibits B-C**.

50. The Infringing Products directly infringe the claim of the Patent-in-Suit. For example, they are [redacted]. The Defendants' products incorporate each of these structural and ornamental limitations in substantially the same way, thereby meeting every element of the claimed [redacted]. See **Exhibits B-C**.

51. Defendants have been and are now actively infringing the claim of the Patent-in- Suit in the State of Pennsylvania, in this judicial district, and other jurisdictions in the United States by selling or offering to sell the infringing Patent-in-Suit products.

52. Defendants' offering for sale, sale, and shipments of Infringing Products have caused and continues to cause Plaintiff to suffer irreparable harm through loss of Plaintiff's exclusive patent rights, loss of market share, loss of future profits, loss of reputation, and inability to realize a return on investment.

53. Defendants' offering for sale, sale, and shipment of Infringing Products into the United States, and Pennsylvania, was willful in nature based upon the dated history of the Patent- in-Suit, Defendants' actual or constructive knowledge of the Patent-in-Suit, the significant popularity of the Plaintiff's Patent-in-Suit products, and the anonymous nature of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts stated in this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary and permanent injunctions pursuant to 35 U.S.C. § 283, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or

offering to sell their Infringing Products;

b. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, identify any e-mail address known to be associated with Defendants' respective Seller ID, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, offering for sale, and/or sale of Infringing Products;

c. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu,Walmart.com, and wish.com, permanently remove any and all listings offering for sale Infringing Products via the e-commerce stores operating under the Seller IDs, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell Infringing Products;

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the

injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff;

e. Entry of an Order awarding Plaintiff damages adequate to compensate for the infringement of his patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284 and that the award be trebled as provided for under 35 U.S.C. §284;

f. In the alterative, Entry of an Order awarding Plaintiff all profits realized by Defendants from Defendants' infringement of the Patent-in-Suit, pursuant to 35 U.S.C. § 289;

g. Entry of an Order finding that this case is exceptional and an award to Plaintiff his attorney fees and costs as provided by for under 35 U.S.C. § 285;

h. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in

all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

i. Entry of an award of pre- and post-judgment interest on the judgment amount; and

j. Entry of an order for any further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all issues so triable.

Date: August 26, 2026

Respectfully submitted,

/s/ Zheng "Andy" Liu
Zheng "Andy" Liu (CA- 279327)
***Aptum Law***
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Email: Andy.Liu@AptumLaw.us
Phone: 650-475-6289

*ATTORNEY FOR PLAINTIFF*